

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT
MAY 25 2007
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| TIMOTHY S. DICK, ET. AL., | CIVIL ACTION NO: 06-0434 |
| VERSUS | JUDGE DONALD E. WALTER |
| UNITED STATES OF AMERICA | MAGISTRATE HORNSBY |

## MEMORANDUM RULING[1]

Before the Court is a motion for summary judgment filed by the Defendant, United States of America. See Record Doc. #18. For the reasons set forth below, Defendant's motion is hereby **GRANTED**.

## STATEMENT OF THE CASE

Plaintiffs, Timothy S. Dick, Gary Dick, and Theresa Dick Roach, filed a medical malpractice action under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*, regarding the medical treatment received by their deceased father, William Dalco Dick, at Overton Brooks Veterans Administration Medical Center in Shreveport, Louisiana ("VAMC").

Mr. Dick died on December 28, 2004, as a result of metastatic carcinoma of the prostate. See Amended Complaint ¶ 5. In 1996 Mr. Dick began to rely on the VAMC as his sole source of medical care. Id. Plaintiffs assert that their father was diagnosed with prostate cancer as early as October 9, 1997, and that VAMC personnel failed to monitor or treat the cancer. Id. Mr. Dick's condition was followed by physicians in the Urology Clinic at VAMC from 1997 until June 14,

---

[1] This opinion is not intended for commercial print or electronic publication.

2000. See Doc. #22, Plaintiffs' Memorandum in Opposition at vii. On more than one occasion the physicians at the Urology Clinic suggested that Mr. Dick have a biopsy of his prostate. See Doc. #22, Exhibit E.[2] As early as December 28, 1998, the decedent refused to consent to a biopsy. See Doc. #22, Exhibit A at 62. Plaintiffs assert that Mr. Dick declined to have a biopsy because he was concerned about an increased risk of complications or death due to other medical problems. See Doc. #22, Issues of Material Facts Not in Dispute ¶ 7. VAMC physicians discussed the risks and benefits of refusing the biopsy. See Doc. #22, Exhibit A at 62. On June 14, 2000, Mr. Dick was discharged from the Urology Clinic and assigned for follow-up in the Primary Care Clinic. Id. ¶ 9. Mr. Dick's medical record dated June 14, 2000, contains the following notation: "needs annual DRE / PSA in Primary Care Clinic." See Doc. #22, Exhibit A at 53.

Following his discharge from the Urology Clinic, Mr. Dick received routine medical treatment numerous times at the Primary Care Clinic between June 14, 2000, and November 27, 2004. See Doc. #22, Issues of Material Facts Not in Dispute ¶ 10. During this time, the Primary Care Clinic did not examine Mr. Dick with a digital rectal exam ("DRE") or screen his condition via a prostate specific antigen ("PSA") test. See Doc. #22, Exhibit D. Mr. Dick was admitted to the VAMC emergency room on June 1, 2003, for hermaturia or blood in the urine. See Doc. #22, Exhibit A at 33. The VAMC medical record indicates that an appointment was to be scheduled

---

[2] Plaintiffs instructed the Court to refer to the Exhibits attached to their Motion for Summary Judgment as to Liability [Doc. #23] as if attached to Plaintiffs' Motion in Opposition to Defendant's Motion for Summary Judgment [Doc. #22]. Accordingly, although the Court cites to Doc. #22, all Exhibits are attached to Doc. #23.

for the decedent with the Urology Clinic for a cystoscopy.[3] See Doc. #22, Exhibit A at 34. Plaintiffs do not indicate whether the decedent was seen in the Urology Clinic or whether the cystoscopy was performed. When a PSA test was performed on November 27, 2004, Mr. Dick's PSA score had increased from 9.7 on June 14, 2000, to 530. See Doc. #22, Issues of Material Fact Not in Dispute ¶ 12. Mr. Dick died on December 28, 2004, from metastatic adenocarcinoma of the prostate. See Doc. #22, Exhibit B.

Bench trial in this matter is currently set for June 25, 2007. This Court issued a scheduling order on November 29, 2006, setting the respective deadlines for parties to take certain steps during the course of litigation. See Doc. #17. The scheduling order set February 26, 2007, as the deadline for the parties to file expert reports in compliance with Fed. R. Civ. P. 26(a)(2)(B). To date, Plaintiffs have neither submitted a medical expert report nor have they identified a medical expert.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id. The court must "review the facts

---

[3] "Cystoscopy" is the direct visual examination of the urinary tract with a cystocope. Dorland's Medical Dictionary (27th Ed).

3

drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mutual Auto Insurance Co., 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. Celotex Corp., 477 U.S. at 325; Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1355-56 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed

admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

Under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*, the United States is liable for injuries caused by negligent or wrongful acts or omissions by an employee of the Government while acting within the scope of his office or employment. United States v. Orleans, 425 U.S. 807, 813, 96 S. Ct. 1971 (1976). Liability pursuant to FTCA is determined in accordance with the law where the act or omission occurred. 28 U.S.C. § 2674; Tindall by Tindall v. U.S., 901 F.2d 53, 54 (5th Cir. 1990). Therefore, the appropriate law to follow in determining the liability of VAMC is the law of the state of Louisiana. See Sewell v. United States, 629 F.Supp. 448, 451 (W.D.La. 1986).

Louisiana law provides that in an action based on the alleged malpractice of a physician, plaintiff has the burden of proving: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the State of Louisiana and actively practicing in a similar community or local under similar circumstances; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with this best judgment in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. La. Rev. Stat. 9:2794.

Under Louisiana law, the Plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of the standard of care, and a causal connection

between the physician's alleged negligence and the injuries resulting therefrom. Pfiffner v. Correa, 643 So.2d 1228, 1233 (La. 1994).

Opinions by medical experts are generally necessary in medical malpractice actions to determine whether the defendant possessed the requisite degree or knowledge, or failed to exercise reasonable care and diligence. Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1277 (La. 1991). However, expert testimony is not required to establish the applicable standard of care in medical malpractice cases where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Young v. Mobley, 923 So.2d 917 (La. Ct. App. 3d Cir. 2006). Cases of obvious negligence in which the Plaintiff need not introduce expert medical testimony to satisfy their burden of proof include amputation of the wrong limb, leaving medical equipment inside the patient, or dropping knives or acid on the patient. Weeks v. Byrd Medical Clinic, Inc., 927 So.2d 594, 597 (La. Ct. App. 3d Cir. 2006). Additional situations include: (1) the failure of a physician to attend to a patient when circumstances demonstrate the serious consequences of this failure, (2) failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary, (3) where the defendant/physician testifies as to the standard of care and his breach thereof, or (4) the alleged negligence consists of violating a statute and/or the hospital's bylaws. Pfiffner v. Correa, 643 So.2d 1228, 1234 (La. 1994).

Defendant argues that without a medical expert Plaintiffs will not be able to present relevant evidence to support (1) the applicable standard of care; (2) breach of that standard by an employee of the Government; and (3) their allegation that their damages were caused by that breach. See Doc. #18 at 4.

Plaintiffs assert that expert testimony is not required to establish the proper standard of care in this case for several reasons. See Doc. #22. First, Plaintiffs claim that VAMC flatly refused to monitor the status of Mr. Dick's prostate cancer after the decedent was transferred to the Primary Care Clinic from the Urology Clinic, evidence by the lack of a PSA test over 4 1/2 years. Id. at vi-vii. Specifically, Plaintiffs argue that Charles Pasquier, a Physician's Assistant assigned to the Primary Care Clinic, refused to monitor the decedent's condition, thus creating an obvious act of negligence. Id. at viii. Mr. Pasquier was questioned about the lack of DRE exams or PSA labs while the decedent was treated at the Primary Care Clinic. See Doc. #22, Exhibit D. When asked why he did not perform a DRE or PSA, Mr. Pasquier responded as follows:

> This patient had had many, many rectal exams, which were done by GU [urology clinic], which were abnormal. And he had an elevated PSA, so.....He already had a presumptive diagnosis of prostate cancer way back, so I didn't see any need to do anything the specialist had already done..... I mean, this guy had refused prostate biopsies on multiple occasions, because of the abnormal DRE and because of his elevated PSA. So, I mean, where were we going to go?

Id. at 7-8. Without testimony as to the proper standard of care for a patient suspected of having prostate cancer but who refused to have a biopsy, this Court is unable to determine whether the acts or omissions of Mr. Pasquier constitute a breach.

Next, Plaintiffs argue that Dr. Frank Casey acknowledged the proper standard of care in his deposition, thus negating the need for an expert witness. Id. However, a careful reading of the deposition of Dr. Casey indicates that he did not testify as to the appropriate standard of care following Mr. Dick's June 14, 2000, transfer to the Primary Care Clinic. See Doc. #22, Exhibit C. When asked specifically about the standard of care in the year 2000, Dr. Casey stated that he did not know whether such a course of treatment [annual DRE and PSP] would have been the

standard of care. Id. at 22, line 17. Accordingly, it does not appear that an employee of the Defendant testified as to the standard of care, much less a breach of that standard.

Finally, Plaintiffs argue that Dr. Kubricht wrote orders for the decedent's care in his chart on June 14, 2000 (annual DRE and PSA), thus creating a policy or procedure for his care that was violated by the Primary Care Clinic. See Doc. #22, Plaintiffs' Memorandum in Opposition at viii. Plaintiffs argue that it is a standard of care violation for VAMC employees not to carry out Dr. Kubricht's orders. Id. Plaintiffs argue that a physician's order in a chart creates a duty as important and mandatory as a hospital bylaw or policy. Id. However, Plaintiffs fail to provide the Court with case law to support the contention that a notation in a chart is equivalent to a hospital policy.

Treatment of cancer, or rather the alleged lack of proper treatment for cancer, is not the type of open and obvious negligence for which expert testimony is not necessary. The facts of this case suggest the need for an expert opinion as to the appropriate standard of care for a patient assumed to have prostate cancer who repeatedly refused to allow doctors to perform a biopsy.

Without an expert witness to establish the proper standard of care, a breach of that standard of care, or damages allegedly caused by the breach, the Plaintiffs cannot meet their required burden of proof. Accordingly, summary judgment is granted in favor of the Defendant.

## CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment is **GRANTED**. All of claims by Timothy S. Dick, Gary Dick, and Theresa Dick Roach are hereby **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED**, at Shreveport, Louisiana, this ___25___ day of May, 2007.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE